COMMONWEALTH *vs.* GEORGE WOOD.

Bristol.    October 24, 1938. — February 1, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Accessory. Practice, Criminal,* Discretionary control of evidence.   *Evidence,* Relevancy and materiality, Competency.   *Abortion.*

No abuse of discretion, constituting error prejudicial to a defendant charged with being accessory after the fact who was being tried with the principal offender, occurred when, after he had rested at the close of the Commonwealth's case, which included no evidence of the absence of the relationship with the principal offender necessary under G. L. (Ter. Ed.) c. 274, § 4, to conviction of the crime charged, he was required, in testifying as a witness for the principal offender, to answer in cross-examination questions establishing that absence.

Testimony by a defendant accused of being an accessory after the fact, that he was not related "by blood or marriage" to a woman who was the principal offender and that he saw her for the first time a few months before when he was out of employment and she "gave him a job" as a handy man around her house, warranted a finding of the absence of all the relationships with the principal offender specified in G. L. (Ter. Ed.) c. 274, § 4.

Conviction of a defendant charged with being accessory after the fact to the crime of unlawful use of an instrument to procure a miscarriage was warranted by evidence that he lived at the home of the principal offender, to whom he was not related within G. L. (Ter. Ed.) c. 274, § 4, knew that the principal offender had procured the abortion, and made false statements to police officers investigating the crime for the purpose of misleading them and assisting the principal offender.

Evidence, showing that a defendant on trial for being an accessory after the fact had not assisted an officer investigating the principal crime for the Commonwealth, was competent in the circumstances.

To show knowledge of the commission of the principal crime on the part of a defendant who was charged with being accessory after the fact to the crime of unlawfully using an instrument to procure a miscarriage and who had stated to officers investigating the principal crime that he knew nothing "about that type of work" and "nothing about what goes on" in the principal offender's house, a letter written in his own handwriting concerning treatment for miscarriage, and another letter, found in his possession and addressed to the principal offender, from one apparently seeking an abortion, were admissible.

Acts and declarations of one, charged with being accessory after the fact to the crime of unlawfully using an instrument to procure a miscarriage which resulted in death, were admissible in evidence although they occurred before the death.

It was proper at the trial of an indictment charging the defendant, under G. L. (Ter. Ed.) c. 274, § 4, with being an accessory after the fact, for the judge to refuse a ruling that one of the elements necessary to conviction was that "the defendant actively aided or assisted the principal to escape arrest or punishment."

INDICTMENT, found and returned on February 8, 1937.

The case was heard by *Hurley,* J., without a jury, and in this court was submitted on briefs.

*J. S. Seligman,* for the defendant.

*F. E. Smith,* Assistant District Attorney, for the Commonwealth.

DONAHUE, J. The defendant was indicted as an accessory after the fact to the crime, alleged to have been committed by Evelyn Dawn, of unlawfully using an instrument on the body of a woman with intent to procure a miscarriage, in consequence of which the woman died. G. L. (Ter. Ed.) c. 274, § 4; c. 272, § 19. The defendant waived a trial by jury and his case was tried before a judge of the Superior Court with the case against Evelyn Dawn. There was a finding of guilty in each case. The defendant filed a claim of appeal and the case is before us on a summary of the record, a transcript of the evidence and eight assignments of error. (G. L. [Ter. Ed.] c. 278, §§ 33A–33G.) The case was here submitted on briefs.

1. The first error assigned by the defendant is the denial by the judge of his motion for a finding of not guilty.

One ground stated in the motion is that "No evidence was offered to show that the defendant was not within the exceptions recited in the indictment." The statute defining the crime of being an accessory after the fact specifically excepts from its application persons within stated degrees of relationship to the principal offender. G. L. (Ter. Ed.) c. 274, § 4. The indictment in the present case denied that Wood bore to Dawn any of the relationships excepted from the operation of the statute. "In order to convict the defendant the Commonwealth was bound at the trial to prove beyond a reasonable doubt that the defendant was not within any of the exceptions described in the indictment." *Commonwealth* v. *Sokorelis,* 254 Mass. 454, 459.

The evidence that had been introduced up to the time the Commonwealth rested its case would not warrant the finding that this burden, which was on the Commonwealth, had been sustained.

When the Commonwealth rested, the defendant, who had not then testified, also rested his case and filed a motion for a finding of not guilty. He was, however, called by Dawn as her first witness. Among other things he testified that he knew nothing of the condition of the deceased either at the beginning or at the end of her stay of a week or more in the Dawn house. He related a conversation with the officers shortly after the death of the deceased, differing from their version, and contradicted a portion of the testimony of one Lewis, who testified for the Commonwealth. At the outset of his cross-examination by the district attorney, he was asked if he was related in any way to Dawn. His counsel objected, stating, in effect, that the lack of evidence negativing any relationship with Dawn was "the substance" of his motion for a finding of not guilty, that such evidence should have been introduced by the Commonwealth in its case in chief, that the witness was "now testifying for Mrs. Dawn," and that counsel for the defendant had refrained from asking the defendant "any question on the case of Commonwealth against Wood." The judge ruled that, as the defendant had taken the stand, he could be asked by the district attorney any relevant question. The defendant took an exception. He was then asked if he was related to Dawn by blood or marriage and answered in the negative. In this there was no error.

A party who has rested his case has the right to introduce, later, competent evidence to rebut evidence of new facts appearing in the testimony of witnesses called by the opponent. *Cobb, Bates & Yerxa Co.* v. *Hills,* 208 Mass. 270, 272. *Commonwealth* v. *Howe,* 2 Allen, 153, 156. But a trial judge may in his discretion admit evidence offered by a party, after he has closed his case, which does not rebut evidence of facts appearing for the first time in the testimony of witnesses called by his opponent, but is material evidence in the case of the party offering the evidence. Such evidence

may be admitted in the discretion of the judge at any stage of the trial, *Commonwealth* v. *Brown,* 130 Mass. 279; *Commonwealth* v. *Meaney,* 151 Mass. 55; after the plaintiff or the Commonwealth has rested and during the cross-examination of witnesses called by the defendant, *Commonwealth* v. *Eastman,* 1 Cush. 189, 197, 217; *Carruth* v. *Bayley,* 14 Allen, 532, 537; *Commonwealth* v. *Brown,* 130 Mass. 279; *Finnegan* v. *Checker Taxi Co.* 300 Mass. 62, 69; see also *Blake* v. *Sawin,* 10 Allen, 340, 343; or after both parties have rested, *Commonwealth* v. *Arrance,* 5 Allen, 517; *Hathaway* v. *Evans,* 108 Mass. 267; *Commonwealth* v. *Smith,* 162 Mass. 508; or after the arguments of counsel have begun, *Smith* v. *Merrill,* 9 Gray, 144; or even later. See *Reynolds* v. *Missouri, Kansas & Texas Railway,* 224 Mass. 379, 387; *Short* v. *Farmer,* 260 Mass. 102, 104; Wigmore, Evidence (2d ed.) §§ 1876–1881.

The defendant objected to answering the question whether he was related to Dawn, on the stated ground that such testimony should have been introduced by the Commonwealth before it rested. It was within the discretion of the judge to exclude the testimony or to admit it. He exercised such discretion by admitting the testimony and there is nothing to indicate that he exercised it improperly.

The statute defining the crime of being an accessory after the fact excepts from its provisions a person who is "a husband or wife, or, by consanguinity, affinity or adoption, the parent or grandparent, child or grandchild, brother or sister of the offender . . . ." G. L. (Ter. Ed.) c. 274, § 4. The testimony of the defendant that he was not related to Dawn "by blood or marriage" was evidence that he was not related to her by "consanguinity" or "affinity" within the meaning of the statute. He did not testify in so many words that he was not related to her by "adoption." There was, however, evidence to warrant an inference that the defendant was not related by adoption in the degrees stated in the statute. A police inspector, who entered the Dawn house with a search warrant, found the defendant there and questioned him. When asked by the inspector what he was doing in the Dawn house, the defendant said that he was

an employee of Dawn as a sort of handy man doing all types of work around the house, and that he saw Dawn for the first time a few months before when he was out of employment, and she "gave him a job." We think that the judge was warranted in concluding that the defendant was not related to Dawn through adoption in the degrees stated in the statute.

The defendant did not put his objection to the question as to his relationship to Dawn on the ground that his answer might tend to incriminate him, nor does he make such contention in his brief. The privilege against self-incrimination is personal and is waived if not claimed. *Ross* v. *Crane*, 291 Mass. 28, 33. *Commonwealth* v. *Nichols*, 114 Mass. 285, 286. *Commonwealth* v. *Price*, 10 Gray, 472, 476. *Foster* v. *Pierce*, 11 Cush. 437, 439.

The defendant further contends that his motion for a finding of not guilty should have been allowed on the ground that the evidence did not warrant a finding that he was guilty of the crime charged in his indictment. There was evidence introduced by the Commonwealth warranting the finding that Dawn, alleged in the indictment against Wood as the principal offender, was guilty of the crime with which she was charged. See *Commonwealth* v. *Dawn*, *ante*, 255. There was also evidence warranting the finding that Wood was an accessory after the fact to such crime. Portions of that evidence are here summarized.

The deceased was taken to the Dawn house by one Lewis on November 3, 1936, and remained there until November 11, when she was brought to her home by her father and brother, and on the following day was taken to a hospital where she died November 17. The defendant lived at the Dawn house where he was employed as a "handy man." On the fourth of November Lewis called to see the deceased at the Dawn house and found her in bed exclaiming with pain. He told Wood, who was at the house, that he was going to call a doctor. Wood told Lewis not to do so, that he was a doctor, that the pains were only natural, and that there was nothing to worry about. He was not a doctor.

On the evening of the day after the deceased was taken

to the hospital, Wood went to her home and talked with her brother. He inquired as to her condition and was told that she had been placed on the danger list at the hospital. Wood then told the brother "to get a specialist or nurses or anything she needed, not to spare any expense, but to try to keep their names out of it." For this statement no reason consistent with innocence appears in the record.

Shortly after the death of the deceased police officers with a search warrant entered and searched the premises. They found Wood occupying an upper bedroom in the house. He told the officers that he first met Dawn a few months before when he was out of work and she employed him to do all sorts of work around the house. The officers found, in a closet in Wood's room, a coat which he admitted was his and in the pockets of the coat a sealed letter dated November 11, 1936, addressed to a woman in Brooklyn, and in a wallet another letter addressed to Dawn. Wood then said that he did not know to whom the wallet or the letters belonged or how they came to be in his pockets. The sealed letter was opened by an officer and read to Wood and he said that he knew "nothing about that type of work" and "nothing absolutely about medicine" and "nothing about what goes on. All I do is the chores around this house." Wood, when called as a witness in the case of Dawn, testified on cross-examination without objection that he wrote the sealed letter. It purported to give the writer's diagnosis of the condition of the woman to whom the letter was addressed, recommended certain medicinal preparations and prescribed a course of treatment. The inference was warranted that the letter was written to a woman who had had a miscarriage. The other letter, dated September 14, 1936, was addressed to Dawn. It warranted the inference that the writer was a woman who sought aid in the procuring of an abortion. Wood also testified under cross-examination that he owned the wallet; that he found the letter which was in it in a wastebasket; and he gave as the reason for having it in his possession that he was going to show it to his mother.

The defendant told the police officers before his arrest that he had never seen the deceased or Lewis in the Dawn

house. When cross-examined he testified,without objection, that he did see them there but had not admitted it to any one up to the time he testified. Various false statements of the defendant to the police officers might be found to have been made to mislead them in their investigation for the purpose of assisting Dawn.

The evidence, with reasonable inferences therefrom, warranted the findings that an abortion had been performed by Dawn at her home on the woman named in the indictment, that the defendant knew of it, and that with such knowledge he gave "aid" to Dawn "with intent" that she should "avoid or escape detention, arrest, trial or punishment" within the meaning of the language of the statute, G. L. (Ter. Ed.) c. 274, § 4, and was thus guilty of the crime charged in his indictment.

2. The second assignment of error is based on the admission, under exception, of the testimony of a police inspector who had charge of the investigation of the death of the woman involved, to the effect that the defendant did not assist him in the investigation. The police officer interrogated the defendant at the Dawn house shortly after the death and before making any arrest. Besides statements that were later shown to be false the defendant made equivocal statements. The circumstances were such that evidence of the conduct of the defendant at the time of the interrogation was competent. There was no error in permitting the witness to negative a contention, which might otherwise be made, that the defendant gave such assistance as he could in the investigation of the crime that had been committed.

3. The ground of the third assignment of error was the admission in evidence against the defendant of the two letters earlier herein mentioned which were found in his possession at the time the police officers entered with a search warrant. The letter in the defendant's handwriting tended to contradict his statement then made that he knew nothing "about that type of work" and nothing about medicine. One element to be proved in the case against Wood was his knowledge that the crime of abortion had

been committed by Dawn. The defendant told the police officers that he knew "nothing about what goes on" in the Dawn house. We think the second letter had some bearing on what the defendant should have known from what he observed during the time the deceased was being treated by Dawn.

4. The fourth assignment of error has as its basis the refusal of the judge to rule, as requested, that on the law and the evidence the finding should be not guilty. This contention has been discussed above in connection with the denial of the defendant's motion that a finding of not guilty be made.

5. The defendant's fifth assignment of error has been waived by him.

6. The sixth assignment of error rests on the refusal of the judge to give requests for rulings to the effect that the crime alleged to have been committed was not consummated until death occurred and that "evidence of any act or declaration prior to the occurrence of death . . . is insufficient to convict the defendant of being accessory after the fact and no inference can be drawn therefrom." The crime of abortion is committed when a defendant unlawfully uses an instrument on the body of a woman with intent to procure an abortion. *Commonwealth* v. *Nason*, 252 Mass. 545, 551. Ensuing death is in the nature of an aggravation of the offence, the effect of which is only the creation of a liability to a greater penalty. Acts and declarations of one charged with being an accessory after the fact to the crime of abortion, made before as well as after the resulting death, are admissible.

7. The seventh assignment of error is the refusal of the judge to give a request for ruling which purported to state the elements that must be shown to connect the defendant with the crime charged. It stated as a necessary element that "the defendant actively aided or assisted the principal to escape arrest or punishment." This is too narrow a statement of the law. The language of the statute defining an accessory after the fact, is: "Whoever . . . harbors, conceals, maintains or assists the principal felon . . . or

gives such offender any other aid, knowing that he has committed a felony . . . with intent that he shall avoid or escape detention, arrest, trial or punishment, shall be an accessory after the fact . . . ."  G. L. (Ter. Ed.) c. 274, § 4.  There was no error in refusing to give the requested ruling.

8. The eighth assignment of error is the refusal of the judge to rule, as requested, that the omission of the defendant voluntarily to give information or to assist the police in the investigation of the principal felony charged is not sufficient to warrant a conviction of the defendant as accessory after the fact.  There was no error in the refusal since the judge was not obliged to rule upon the legal effect of a portion of the evidence.  *Commonwealth* v. *Polian*, 288 Mass. 494, 500.

*Judgment affirmed.*