COMMONWEALTH *vs.* JOSEPH GENTILE.

Middlesex.     January 17, 1926. — February 26, 1926.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Animal,* Abuse.     *Evidence,* Presumptions and burden of proof.

At the trial of a complaint for cruel abuse of a dog, there was evidence that the dog was seen in an evening running from a yard with a string tied to his tail, and "with his tail, his whole rear on fire, a ball of red fire . . . red flame passing over the whole of his tail and rear end;" that the defendant then was seen inside of the fence near a gate through which the dog ran; that the defendant was alone at this time; that, when asked by the witness, "Who did it," he answered, "I don't know," and "started to laugh"; that "When he [the defendant] saw I meant it, he said, 'It's a damn shame;'" that the defendant was night watchman of the estate which included the yard; that he was interviewed about two hours later by a police officer when he stated that he had not been on the estate all night and learned of the dog "when he came back." In his testimony the defendant gave a version of the conversation which he held with the witness who had testified to having seen him at the time when he saw the dog, which was different from that of the witness. *Held,* that

(1) A finding was warranted that the defendant was upon the premises when the dog escaped, and that he had opportunity to commit the offence;

(2) It was not essential for the Commonwealth to prove that the defendant had the exclusive opportunity to commit the offence;

(3) A finding was warranted that the defendant's statements concerning his absence from the premises and his knowledge of the events were intentionally false, and were made to divert suspicion from himself;

(4) From the defendant's conduct and speech and all the circumstances in the case, his guilt could be inferred: a verdict of guilty was warranted.

COMPLAINT, received and sworn to in the Newton District Court on October 17, 1924, charging the defendant with cruelly abusing a dog.

On appeal to the Superior Court, there was a trial before *Avery*, J., a judge of a district court sitting in the Superior Court under Sts. 1923, c. 469; 1924, c. 485. Material evidence is described in the opinion. The defendant alleged an exception to a refusal by the trial judge to order a verdict of not guilty. There was a verdict of guilty, and the defendant alleged exceptions.

*P. C. Borré*, for the defendant.

*A. K. Reading*, District Attorney, & *W. L. Bishop*, Assistant District Attorney, for the Commonwealth, submitted a brief.

CARROLL, J. The defendant was found guilty of "cruelly abusing a certain animal; to wit: a dog." There was evidence that the dog was seen as he ran from "Stewart's yard" in Newton, about twenty-five minutes after nine o'clock in the evening, "with his tail, his whole rear on fire, a ball of red fire . . . red flame passing over the whole of his tail and rear end." A cord, which was in evidence, had been tied to the dog's tail. Michael J. Carney testified that when he saw the dog on fire, coming from the Stewart estate, the defendant was inside of the fence near a gate through which the dog ran; that the defendant was alone at this time; that when asked by the witness "Who did it," he answered, "I don't know," and "started to laugh"; that "When he [the defendant] saw I meant it, he said, 'It's a damn shame.' " The defendant was the night watchman on the Stewart estate, on which there was a "main house with three other houses," and a barn. About thirty minutes after eleven o'clock on the night in question, the defendant, when interviewed by police officers of the city of Newton, told them that he had not been on the estate all night; that "he had been to a restaurant in Newton, and that when he came back he learned about the dog." He testified that when he met Carney he (Carney) asked him if he knew about the dog; that he asked, "What dog"; that Carney said, "the dog which had just run out of the yard," and the defendant replied, "that he had just come into the yard, and that there wasn't any dog."

The jury could have found that the defendant was upon

the premises when the dog escaped; that he had the opportunity to commit the offence; and it was not essential for the Commonwealth to prove that the defendant had the exclusive opportunity to commit it. *Commonwealth* v. *Leach,* 160 Mass. 542, 551. They also could have found that the defendant's statements concerning his absence from the premises and his knowledge of the events were intentionally false, and were made to divert suspicion from himself. *Commonwealth* v. *Spezzaro,* 250 Mass. 454, 457, and cases cited. From the defendant's conduct and speech and all the circumstances in the case, his guilt could be inferred. The motion for a directed verdict was denied properly. There was no error in the refusal to give the defendant's requests for instructions, nor in the judge's charge to the jury.

*Exceptions overruled.*