JOHN B. RICHARDSON *vs.* THE TRAVELERS FIRE INSURANCE COMPANY & others.

Suffolk.   November 7, 1933. — November 27, 1934.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Evidence,* Presumptions and burden of proof, Inference.   *Fire.*

At the trial of an issue, framed for a jury in a suit in equity by the insured under a policy of fire insurance against the insurer, whether the plaintiff was so directly or indirectly responsible for a fire, which was agreed to have been incendiary, that the defendant was relieved of liability under the policy, the burden was on the defendant to prove that the fire was set or was caused to be set by the plaintiff, but the proof did not need to be beyond a reasonable doubt, merely a fair preponderance of the evidence being necessary.

Circumstantial evidence at the trial of the issue above described, including evasive and contradictory testimony by the plaintiff, evidence of overinsurance of the premises while unoccupied and without a request therefor by a mortgagee, of need of funds on the part of the plaintiff, who alone would profit by the fire if the insurance were paid in full, that the plaintiff alone had the means of entering the building without force, and of inquiries by the plaintiff as to times when police were accustomed to be in the neighborhood, was *held* to warrant a fair inference, as distinguished from a surmise or conjecture, that the plaintiff caused the fire.

BILL IN EQUITY, filed in the Superior Court on August 4, 1931, and described in the opinion.

The issue, described in the opinion, was framed for trial

by jury, and was tried before *Bishop*, J.   Material evidence at such trial is described in the opinion.   The judge denied a motion by the plaintiff that the jury be ordered to answer the issue in the affirmative.   The answer was in the negative. The plaintiff alleged exceptions.

*J. G. Bryer*, for the plaintiff.

*B. A. Brickley*, (*R. H. Lee* with him,) for the defendants.

DONAHUE, J.   The twelve insurance companies named as defendants issued to the plaintiff policies of insurance in standard form in the aggregate amount of $55,000 on his property, which was damaged by fire on January 18, 1931, to the extent of $30,000.   Each policy was payable in case of loss to a mortgagee and provided that "whenever this company shall be liable to a mortgagee for any sum for loss under this policy for which no liability exists as to the mortgagor or owner and this company shall elect by itself or with others to pay the mortgagee the full amount secured by such mortgage, then the mortgagee shall assign and transfer to the companies interested upon such payment the said mortgage together with a note and debt thereby secured."   The bill alleges that the defendant companies, purporting to act, but not in good faith acting, under the foregoing provision have paid the mortgagee the amount of its debt and received an assignment of the mortgage and mortgage note in the name of one Cole, who is also a defendant, for the use and benefit of the companies. One of the prayers of the bill is that a decree be entered that there is due and payable to the plaintiff $30,000 for the loss sustained by him "in proportion to the amount of insurance carried by each of said defendant companies." Another prayer asks that upon payment by the plaintiff to the companies of the amount by which the mortgage debt exceeded $30,000 the defendant Cole be ordered to deliver up the mortgage and the mortgage note and discharge the mortgage.

The following issue was framed and submitted to a jury: "Is there any liability on the part of the defendants to the plaintiff by reason of a fire on the plaintiff's premises on January 18, 1931?"   To this the jury returned the answer,

"No." The plaintiff took exception to the failure of the judge in the Superior Court on motion to direct the jury to answer this issue in the affirmative. The bill of exceptions states: "It was stipulated that if the defendants were liable at all, the verdict should be in the sum of $30,000. No issue was raised by the defendants as to the plaintiff's having complied with the conditions precedent to bringing suit under the policies, or that the policies were in effect at the time of the fire. The sole issue for the jury was whether the plaintiff was so directly or indirectly responsible for the fire as to avoid liability under the policies. The plaintiff agreed that the fire was of incendiary origin."

The burden was on the defendants to prove that the fire was set or was caused to be set by the plaintiff. The proof did not need to be beyond a reasonable doubt, as is necessary where such a contention is made against a defendant in a criminal case; it was here sufficient if the proof was by the fair preponderance of the evidence. *Schmidt* v. *New York Union Mutual Fire Ins. Co.* 1 Gray, 529. There was no direct evidence that the plaintiff set the fire or that he procured some one else to set it. The evidence was voluminous and much of it conflicting. Where conflicting, since the jury returned a negative answer to the question submitted, the version most favorable to the defendants must be here taken. The substantial question for decision is whether the evidence, so viewed, by reasonable inference from facts which might have been found, warranted the conclusion by the jury that it was proven by a fair preponderance of the evidence either that the plaintiff set the fire or that he procured its setting by some one else.

The plaintiff's actual investment in the property was small. Prior to the time of his purchase it had been occupied by a private school. The premises consisted of one hundred fifty-five thousand square feet of land and four buildings in a residential district of the city of Newton. The largest building, a house of twenty rooms, had been used as a dormitory. It set back on the lot several hundred feet with nothing between it and the street but trees. The other three buildings were described in the testimony

as the schoolhouse, the gymnasium and the garage. The plaintiff purchased the property in August, 1929, from a mortgagee who had foreclosed. He held title subject to a mortgage of $33,500 and had become the owner by the payment of less than $300.

Within four months of the time of the fire the plaintiff increased the amount of insurance on the dormitory, which was the building burned, from $24,000 to $44,000. At the time of his purchase the total amount of insurance on all the buildings was $35,000. The premises became vacant shortly after the plaintiff took title and remained so for about a year. On April 1, 1930, upon the expiration of the old policies, he renewed the insurance in the same amount. He secured a tenant in August, 1930, who undertook to run a private school there. The plaintiff then knew that because of starting so late in the year the tenant had a poor chance of making a success of the enterprise. It was on October 1, 1930, that the plaintiff put $20,000 additional insurance on the dormitory and in early December the tenant gave up the school and moved out. The furniture was sold and removed from the premises around December 20 and the premises remained unoccupied up to the time of the fire a month later. The mortgagee had not requested that additional insurance be secured. The plaintiff gave as his reason for increasing from $24,000 to $44,000 the insurance on the dormitory, without which building he testified that the other buildings were worthless, that the "mortgage was not covered" by the insurance already on the building. The mortgage amounted to $33,500 while the amount of insurance was, from the time of his purchase to October 1, 1930, $35,000. We think that from the increase of the insurance on the dormitory to $44,000, making the total insurance on the buildings $55,000, an inference that the property was overinsured could not in the circumstances appearing be said to be unwarranted.

The business of the plaintiff, which was real estate, plumbing and heating, was not good in the month of January, 1931. He was unable to pay the taxes on real estate in Arlington which he owned. Besides that he owed $5,000

or $6,000 and a suit against him for $12,000 was nearing the time of trial. He was endeavoring to sell the real estate in Newton. The plaintiff would be financially benefited by a fire if he collected the insurance. He testified that there was no one else who would profit by a fire.

Soon after his tenant moved out in December the plaintiff changed the lock on the front door, bolted the other doors on the inside and fastened the windows. He testified that notwithstanding this people thereafterwards got into his house, and that on one occasion he went there and found a side door, which he had left bolted and locked, open, and no signs that a forcible entry had been made, and that on another occasion he found the cellar door broken open. He also testified that more than once through his secretary he had made complaint about this to the Newton police; but his secretary testified that to the best of her recollection she never communicated with the police about the matter. A sergeant of police testified that an examination of the records of the police department showed no record of a complaint about any one forcing an entrance to the house, and the police officer on whose beat the building was, whose duty it was to investigate any such complaint, testified that he never knew of a complaint being made or received instructions from headquarters with reference to the doors or windows being broken. The jury was warranted in finding that no complaints that his house had been entered by other persons than himself had been made by the plaintiff and could have inferred that his testimony as to such entries was given to divert suspicion from himself. When the firemen in response to an alarm reached the building on the early morning of January 18 they found the doors and windows locked and were obliged to force an entrance. The evidence warranted the finding that the plaintiff alone had a key which would permit a person to enter the house and to leave it locked up as it was when the firemen arrived at the burning building.

It was admitted that the fire was incendiary in origin. The setting of the fire was not carelessly planned or hurriedly executed. There was no kerosene or gasoline on

the premises eight days before the fire. The firemen found on their arrival twenty-four cans, mostly of five and ten gallon sizes, which contained or had contained kerosene oil or gasoline or a mixture of both. The firemen found ten or twelve gallons which were not consumed. The cans had holes punched in their tops, which would permit gases to escape if there was fire outside the cans, and they were placed in various halls, rooms and closets throughout the house. , The fire was started back of a stairway on the first floor and burned right up through the roof. The inference was warranted that these preparations were made by a person or persons who had free access to the building and that considerable time must have been spent in the arrangements made.

About three weeks before the fire the policeman on the beat saw the plaintiff driving away from the premises after dark and asked what the plaintiff was doing. The latter answered that he was the owner and that he would be around there more or less. Five days before the fire the plaintiff asked a former janitor who lived in the vicinity at what time the police officers on the beat made their rounds and was told between seven and eight o'clock in the evening. Much of the plaintiff's testimony appearing in the record was evasive and contradictory.

There was warrant for the finding by the jury that facts were proved which are generally considered significant in determining whether the owner of an insured building caused it to be burned. A financial benefit to the plaintiff would result from the fire and to no one else. *Commonwealth* v. *Bader*, 285 Mass. 574. The building was over-insured. *Commonwealth* v. *Cooper*, 264 Mass. 368, 374. The plaintiff was in need of money. *Commonwealth* v. *Selesnick*, 272 Mass. 354, 357, 360. He alone possessed the means of entering the building without force and leaving it in the condition in which the firemen found it. *Commonwealth* v. *Asherowski*, 196 Mass. 342, 347. *Commonwealth* v. *Alba*, 271 Mass. 333, 338. *Commonwealth* v. *Selesnick*, 272 Mass. 354, 359. On all the evidence we are of the opinion that by fair inference as distinguished

from surmise or conjecture the jury was warranted in finding that the plaintiff caused the fire. "It is not required that the inferences be unescapable or necessary; it is enough if they are not too remote according to the usual course of events, and if all the circumstances including inferences are of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of incendiarism . . ." (*Commonwealth* v. *Cooper*, 264 Mass. 368, 373) by a fair preponderance of the evidence.

*Exceptions overruled.*