COMMONWEALTH *vs.* EMIL CAVEDON & another.

Worcester.    September 26, 1938. — October 25, 1938.

Present: FIELD, C.J., DONAHUE, QUA, COX, & RONAN, JJ.

*Arson. Evidence,* Presumptions and burden of proof, Inferences.

Evidence, at the trial of indictments against two for arson, that the property was insured, though not overinsured; that the defendants were pecuniarily interested in a business conducted thereon which was in financial difficulties at the time of the fire; that both defendants with an accomplice were alone on the premises at the time of a fire of incendiary origin, had opportunity to set it, and, although told

of it, gave no alarm and made no attempt to put it out; that both made intentionally false statements respecting their conduct at the fire; and that they did not deny charges by innuendo made to them by one of their employees, warranted a finding of guilty beyond a -reasonable doubt although the inference leading to such finding was not unescapable or necessary.

INDICTMENT, found and returned on January 20, 1938, against Emil and Raymond R. Cavedon and Ligor Toli.

All defendants were found guilty after a trial before *Burns*, J. Emil and Raymond R. Cavedon appealed with assignments of error.

*E. G. Norman*, (*C. T. Tatman* with him,) for the defendants.

*A. A. Gelinas*, Assistant District Attorney, for the Commonwealth.

Cox, J. The defendants, together with one Ligor Toli, were convicted upon an indictment which charged them in two counts with (1) wilfully and maliciously burning the shop of Alexander Cavedon and (2) wilfully and maliciously burning the goods and chattels of the Cavedon Spinning Company. G. L. (Ter. Ed.) c. 266, § 2, as amended by St. 1932, c. 192, § 2. G. L. (Ter. Ed.) c. 266, § 5, as amended by St. 1932, c. 192, § 4. The case comes here with a summary of the record, a transcript of the evidence, and an assignment of errors under G. L. (Ter. Ed.) c. 278, §§ 33A–33G. *Commonwealth* v. *McDonald*, 264 Mass. 324. The defendants admit that the fire was of incendiary origin and that they had the opportunity to set it. The assignment of error relative to action of the trial judge upon the motion for new trial was waived at the argument, so that the only question for consideration is whether the jury was warranted in finding the defendants guilty. The defendants have not argued that, if the evidence warranted the finding that the fire was set by them or either of them, it did not also warrant a finding that this was done wilfully and maliciously. See *Commonwealth* v. *Brooks*, 9 Gray, 299; *Commonwealth* v. *Goodwin*, 122 Mass. 19, 35; *McGurk* v. *Cronenwett*, 199 Mass. 457.

The jury could have found the following facts: The building in which the fire occurred was owned by Alex-

ander Cavedon, the father of the defendants, and was occupied by the Cavedon Spinning Company, which manufactured yarns. The father owned two hundred forty-seven shares of the company's stock and the other three shares were owned by his three sons, including the defendants. The defendant Emil Cavedon was an officer of the corporation and in charge of the plant at the time of the fire. The defendant Raymond R. Cavedon did some of the office work, was in charge of the finishing room, and solicited orders. Both drew salaries from the company. For some weeks prior to the fire, which occurred on Saturday, December 18, 1937, with the exception of making some sample lots of yarn, very little work had been done. After the fire, Emil Cavedon stated that "We were on the rocks." A day or two before the fire, Emil Cavedon told the boss carder and the overseer of spinning to get their departments ready to operate on the following Monday, December 20, as they had orders to fill which would require two days' work. Preparations were made accordingly on Saturday, the eighteenth; the carding and spinning machines were operated and left in condition to continue production on Monday. The rooms were swept and everything was left in order when the last employee in these two rooms left the factory at 4:30 o'clock in the afternoon. Emil Cavedon and Toli were in the factory during the entire afternoon and until after the fire was discovered by outsiders. Raymond R. Cavedon left the factory about 3:30 o'clock in the afternoon and went to West Warren, twenty-eight miles from Worcester, where he delivered some sample yarn and then returned to Worcester, although his home was in Woonsocket, Rhode Island. He went to the factory and was there at the time the fire was discovered by outsiders.

Between 6:45 and 7:00 o'clock in the evening of December 18, evidences of three fires were discovered in the spinning room, which was on the second floor of the building, by some girls who lived in the neighborhood. One of these girls caused a telephone message that there was a fire to be sent to the fire department. The message was recorded as

having been received at 7:15 o'clock. Another of these girls, Mary Armenti, ran some distance to a fire alarm box and attempted to ring in an alarm. She then returned to the factory and, seeing a light in the office, which was on the street floor, ran up the outside steps and tried the door, but it did not "give." She shouted "Fire" twice, as loud as she could. The main entrance to the building is from Nebraska Street at the corner of Winona Street, where there are two out-swinging doors with glass panels. Directly opposite these doors is a ground glass partition, a part of which is clear, permitting vision from the outer steps into the office. To the right as one enters through the outside doors, is a rail with a swinging bar, which opens into a corridor, with the stairs to the second floor going up on the right. Just inside the rail to the left is the door to the office. The office is thirty-four feet wide on its front on Winona Street, and thirty-two feet deep. At the rear of the office is a door opening into a corridor eight feet wide, which runs at right angles with Nebraska Street, and just opposite this door, in the other wall of the corridor, is a door to the card room. The Armenti girl saw three men sitting in the office, one of whom, Emil Cavedon, was at a desk. "Seeing he [Emil] didn't pay no attention" (when she shouted "Fire"), she got a stone and threw it at the door, whereupon Emil Cavedon came to the door and she yelled "Fire" again and said "your building is on fire." Cavedon walked out a little "ways," looked up, and then said to her, "Go away." At that time the reflection of the fire on the second floor could be seen.

At 7:18 o'clock a fire alarm was rung from a nearby box and a fire engine arrived at the scene in about half a minute. After Emil Cavedon had told the Armenti girl to go away, he returned to the office, got his coat, and came out of the building with Toli. As they came out, the Armenti girl said to Cavedon, "Didn't you see the fire?" and he replied, "I was too busy." He then lighted a cigarette and, as he did so, his hand was "shivering." Again he said to the girl, "Go away." This all happened before the firemen arrived.

When the first piece of apparatus arrived, a fireman, who saw the fire on the second floor only but who had seen three men in the office, tried the main door but could not open it. He then kicked on it and one of the men came to the door, opened it and said, "What's the matter?" The fireman replied, "Your place is on fire." A line of hose was taken into the building and up to the second floor. A lieutenant of the insurance fire patrol, who arrived after the firemen had entered the building, went into the main office and saw the defendants and Toli standing there. He passed through the office, across the corridor and opened the door to the card room and discovered a fire there. Emil Cavedon testified that when the fireman "banged" on the door, he went to the card room, opened the door, and saw that "this was a mass of smoke . . . I saw the firemen coming in and I went back to this door again, and the fireman . . . asked me if the sprinklers were running." There was no evidence that the defendants attempted to give any alarm of the fire, or that Emil Cavedon, when he discovered the fire in the card room, which was before the lieutenant arrived, made any effort to tell the firemen that there was a fire there. Boxes attached to several of the spinning frames had been stuffed with inflammable material and the fires on the second floor were largely confined to these machines, and those which were burned were the most valuable. The fires on the first floor in the carding and picker rooms were around the machines.

About two weeks before the fire, Toli, who had been working there for some time, was made a spare watchman, and it became his duty to take the place of the regular watchman on Saturday nights only. He was provided with a watchman's clock that had to be wound at the eleven stations in the factory, each "wind" being recorded upon a disk or dial which was inserted in the clock. The regular watchman inserted the disk for Toli's use on the night of December 18 and closed the clock. When the disk was examined after the fire, it showed that Toli started his second round at about six or seven minutes after 7:00

o'clock in the evening and the last station was wound at about 7:14. There was evidence that the clock had been opened, and also that, by manipulating the disk, the record of a round at six o'clock could be made to appear as if made at seven o'clock. Raymond Cavedon was familiar with the watchman's rounds and the direction taken, and knew how to operate the clock. After the fire, the defendants went to Toli's house and asked him to return on Sunday night to watch in place of the man they had already told to come. Late in the afternoon prior to the fire, Emil Cavedon directed Toli to put out the only light that was usually kept burning at night inside the factory.

Emil Cavedon testified that he had asked his brother to return to the factory when he came back from West Warren, but it could have been found that nothing was said to Raymond about this. There was testimony that it might have been possible for someone to get into the building through the windows and some of the doors, but there was no evidence that any one had entered the building by these means of access, and the jury could have found that no one did. Emil Cavedon denied that any girl came to the office at the time of the fire or that he had any conversation with any girl at any time in regard to the fire, and testified that he never saw the Armenti girl until she testified in court. Raymond Cavedon testified that, after the first piece of apparatus arrived, he went out and moved his automobile, which he said he had parked near a hydrant at the factory upon his return from West Warren. The jury could have found that there was no automobile there or in the vicinity at the time. Both defendants testified that they knew nothing about the fire until the firemen pounded upon the door and entered the building.

One Bourassa was employed at the factory at the time of the fire. Thereafter he had several conversations with Toli. Several weeks after the fire, Bourassa had a conversation with the defendants and their father in which he was told that his working time was to be cut down to four days a week. He appears to have assented to this, but, on the same day, he made some objection to Emil Cavedon,

saying that he did not think it was right to take his money and give it to Toli, whereupon Emil Cavedon replied, "You know, Bourassa, we need that man." Bourassa replied, "I know you need that man, but I don't owe him a cent, to Toli. If you have some obligation to Toli, take your own money and give it to Toli. I ain't got no obligation to Toli." Emil replied, "All right, Bourassa, I talk to my father and we fix it tomorrow." The following day Raymond Cavedon called Bourassa to the office and, in the presence of the defendants and their father, there was a further conversation. Bourassa objected to the arrangement which had been made for his work, and testified as follows: "Mr. Cavedon, the father. He said 'I heard that you ain't satisfied.' So I said, 'No, Mr. Cavedon, I ain't satisfied' and then I said, 'I told you why, Mr. Cavedon'' — I was talking to Emile — 'Emile, you asked me, "Can't you see, Bourassa, by what place those men could come in here to fix that fire?" Always I answer, "I was not here, I don't know nothing, I was not here."' So I says, 'Mr. Cavedon,' — the father, — I said, 'Yes, you asked me that yourself, Mr. Cavedon, but now if you want to know I tell you where those men.' He said, 'All right, Bourassa, tell us.' 'Well,' I said, 'Nobody came in, they was in here, they was inside.' So Emile asked me, 'Do you want to say us, Bourassa?' I said, 'Yes, sir.' I said, 'Toli told me everything', so that is the end. Mr. Cavedon stand up and say, 'That is enough, that is enough, the mill is going to stay the way it is now.'" The jury could have found that the defendants said nothing by way of denial, but that after Bourassa left they had a conversation "amongst ourselves."

Some time after that, at the request of Raymond Cavedon, Bourassa went to the office of the defendants' attorney with them and their father. There was some talk about the fire but Bourassa declined to give any information. Some time thereafter his wages were cut, and he left his employment. Toli continued to work at the factory. Raymond Cavedon testified that "We took him [Bourassa] down there [to the attorney] because we thought he

knew something about it." In connection with the reason why the defendants did not discharge Bourassa when they learned that he was talking with Toli, Emil Cavedon testified that ". . . we wanted to investigate if it was true that Mr. Vanenbulke [the boss carder] knew everything about the fire such as Bourassa had told us. . . . We investigated, and Mr. Vanenbulke said, 'Nothing of the kind, I never spoke to Toli,'" but that Vanenbulke did say that Toli did tell him, "If me go, him go too."

The defendants argue that verdicts of guilty were not warranted in that the testimony does not go beyond the realm of surmise and conjecture. It is true that there was no direct evidence that the fires were set by the defendants or either of them, but we are of the opinion that there was evidence which, if believed, warranted the jury in "finding facts from which it might properly draw inferences, not too remote in the ordinary course of events, or forbidden by any rule of law, and conclude upon all the established circumstances and warranted inferences that the guilt of the defendant was proved beyond a reasonable doubt." *Commonwealth* v. *Vellucci*, 284 Mass. 443, 445. In addition to the facts already narrated, the jury could have found that Toli, on his seven o'clock round, passed through the spinning room when the fires there had already been discovered by outsiders, and that he passed along the side of the card room when the fires were burning there. After this round he returned to the office and, upon the defendants' own admission, Raymond Cavedon entered the office within a few minutes after Toli's return. The jury could have found that Raymond Cavedon returned to the factory sooner than this, taking into account, as it had a right to, the distance between Worcester and West Warren, the nature of his business there, and the various things that he testified he did on his journey, which was by automobile. The jury was not required to accept his statement of the time consumed in making this trip. There was no evidence that the defendants made any effort to extinguish the fire although it appeared that there were fire extinguishers in the building. This fact and their failure to give any alarm,

*Commonwealth* v. *Cali*, 247 Mass. 20, *Commonwealth* v. *Vellucci*, 284 Mass. 443, while open to explanation, and their statements which might have been found to be intentionally untrue, *Commonwealth* v. *Spezzaro*, 250 Mass. 454, 456–457, might have been found by the jury to be indicative of guilt. The fact that neither of the defendants was insured under any policy of insurance, and the fact that the jury might have found that the property was not overinsured, did not prevent the jury from finding the defendants guilty. *Commonwealth* v. *Vellucci*, 284 Mass. 443, 446. The jury could find the crime proved beyond a reasonable doubt, though the inference of guilt from the facts established was not unescapable or necessary. *Commonwealth* v. *Bader*, 285 Mass. 574, 577, and cases cited. The testimony of Emil Cavedon that he did not see the witness Armenti or have any conversation with her in regard to the fire might have been disbelieved by the jury. If it were found that this testimony was intentionally false in material particulars, it would be evidence of guilt. *Commonwealth* v. *Sokorelis*, 254 Mass. 454. It was open to the jury to find that during the conversation with Bourassa, Raymond Cavedon said nothing, and that there was no denial on the part of either defendant of the charges that Bourassa made. It was for the jury to consider these facts which might be thought to have some tendency to show guilt, if, in the circumstances, a reply or denial was called for. *Commonwealth* v. *O'Brien*, 179 Mass. 533. *Commonwealth* v. *Biggs*, 293 Mass. 235.

The factors which, in the case of *Richardson* v. *Travelers Fire Ins. Co.* 288 Mass. 391, 396, are said to be "generally considered significant in determining whether the owner of an insured building caused it to be burned," are such as have been noted in cases cited therein, and the defendants argue that several of these factors are not found in the case at bar; but as the opinion in the *Richardson* case points out at page 397, with a quotation from *Commonwealth* v. *Cooper*, 264 Mass. 368, 373, adapted, however, to the rule in civil cases, "It is not required that the inferences be unescapable or necessary; it is enough if they are

not too remote according to the usual course of events, and if all the circumstances including inferences are of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of incendiarism beyond a reasonable doubt." We are of the opinion that, upon all the evidence, the submission of the case to the jury was warranted, and that there was no error.

*Judgment affirmed.*