GANTS, C.J.
*1123 **145 The issue presented on appeal is whether a defendant who witnessed a killing may be found guilty as an accessory after the fact to murder, in violation of G. L. c. 274, § 4, where the only "aid" or "assistance" alleged is that the defendant made false and misleading statements to police detectives and refused to provide them with the telephone numbers they requested. We conclude that, where the defendant did not provide the police with a false alibi or comparable information that would exculpate the principal felon (here, the killer), a false narrative of the crime that would give the principal a defense, or false information to assist in the principal's escape, the defendant's false statements and refusal to cooperate alone do not constitute the "aid" or "assistance"
**146 required to find a defendant guilty as an accessory after the fact under the statute. Because the evidence was insufficient as a matter of law to sustain the conviction, we vacate the judgment of conviction and remand the matter to the Superior Court for issuance of a judgment of acquittal.[1]
Background. Because the defendant challenges the sufficiency of the evidence to prove that he was an accessory after the fact, we summarize the facts that the jury could have found in the light most favorable to the Commonwealth. Commonwealth v. Lao, 443 Mass. 770, 779, 824 N.E.2d 821 (2005), S.C., 450 Mass. 215, 877 N.E.2d 557 (2007) and 460 Mass. 12, 948 N.E.2d 1209 (2011).
Before dawn on October 16, 2011, the defendant, after visiting a friend's home to drink and socialize, was returning home with Hector Soto and Josue Santos in a motor vehicle driven by Santos. They stopped at a convenience store in the Jamaica Plain neighborhood of Boston on the way so that Santos could buy a drink. After Santos returned to his vehicle, Soto began arguing in the parking lot with Kenneth Soto (victim),[2] who was with a group of friends who were in a vehicle parked next to Santos's vehicle. The victim began to wrestle and exchange punches with Soto. The defendant then stepped outside the vehicle and joined the fight to assist Soto. During the course of the fight, Soto stabbed the victim. Soto and the defendant then returned to the vehicle, and Santos quickly drove away. In the vehicle, Soto and the defendant laughed together while talking about the fight. Santos then dropped the defendant and Soto off at the defendant's home. The victim later died from his stab wound.
On October 23, 2011, Detectives Garrett G. Mitchell and Michael T. Walsh of the Boston police department interviewed the defendant at his home about the incident; the interview was recorded. Mitchell told the defendant that they were there because they were investigating an incident *1124 "that happened over at [a convenience store] in Jamaica Plain" early on Sunday morning, October 16. The defendant said that he had seen the news on television and knew that a young man had been killed there.
When Mitchell asked the defendant where he was on Saturday night, October 15, he said he was at "Rashad's grandmother's **147 house" in the Hyde Park neighborhood of Boston "until late," drinking, smoking, and watching television with some of his friends. He said that he had driven there alone, returned home alone, and did not stop anywhere on his way home. He told the detectives that he had "no idea" when he returned home.
When Mitchell asked whom he was with in Hyde Park, the defendant said that "people kept coming in and out." He initially said that he could not remember anyone who was there apart from Rashad, but later responded that he usually spends time with Joel,[3] Paul, and Pat. Recognizing that "Joel" was a reference to Soto, the detectives pressed the defendant for more information about Joel. When asked where Joel lived, the defendant said that he lived "not too far from the baseball field" in the Roslindale neighborhood of Boston. When asked if Joel goes by another name, the defendant responded, "That's what I know him by." Soto's middle name is "Joel" but, at trial, all who knew Soto referred to him by his first or last name or his nickname, "Nemo."
When Walsh asked the defendant if he had the telephone numbers of Joel and the other persons who were there that night, the defendant said, "I have most of their numbers, yeah." When the detective asked the defendant if he would give them those numbers, specifically asking for Joel's telephone number, the defendant responded: "[I]t feels like the way you're doing it is, ... whoever I give you, that's who you're going to go after, no matter what.... I'm not into just involving other people ..., and this is serious." Walsh replied, "[I]f you don't want to give it to us, that's fine. That's up to you."
A grand jury indicted Soto for the murder of the victim, also indicting the defendant for assault and battery in violation of G. L. c. 265, § 13A, and as an accessory after the fact to murder in violation of G. L. c. 274, § 4. Soto and the defendant were tried together in the Superior Court in April 2013. A jury found Soto guilty of murder in the second degree and the defendant guilty as an accessory after the fact; the jury acquitted the defendant of assault and battery. The defendant timely appealed, and we transferred his appeal to this court on our own motion.
Discussion. General Laws c. 274, § 4, provides in relevant part:
"Whoever, after the commission of a felony, harbors, conceals, **148 maintains or assists the principal felon ... or gives such offender any other aid, knowing that he has committed a felony ... with intent that he shall avoid or escape detention, arrest, trial or punishment, shall be an accessory after the fact ...."
The Commonwealth does not contend that the defendant "harbor[ed]," "conceal[ed]," or "maintain[ed]" Soto, or that he assisted Soto by allowing Soto to come to his home on the morning of the killing. Rather, the Commonwealth argues that the defendant was an accessory after the fact to murder because he lied to the detectives in his *1125 interview about his own actions and whereabouts on the morning of the killing; referred to Soto as "Joel," claiming no knowledge of his first or last name or his nickname; and refused to provide the detectives with Soto's telephone number. The Commonwealth contends that, by this conduct, the defendant "aided" or "assisted" Soto in evading capture or punishment for the killing, with the intent to help Soto evade capture or punishment.
The evidence at trial was sufficient to prove beyond a reasonable doubt that the defendant lied to the police when he said that he drove home alone on the morning of the killing, and when he claimed he knew Soto only by the name "Joel." The evidence also established that the defendant declined to provide the detectives with Soto's telephone number after they specifically requested him to provide that information. The question we must answer is whether that evidence suffices to prove the element of aid or assistance that is required to prove that the defendant was an accessory after the fact to murder. We conclude that it does not. Because the failure of proof of that element alone dooms the conviction, we do not reach the other issue argued by the parties -- whether the evidence was sufficient to prove the required element that the defendant specifically intended during his interview to help Soto evade capture or punishment.
"We have long recognized that the statute's definition of accessory after the fact 'is in the common law form' and 'obviously has roots in the common law tradition.' " Commonwealth v. Perez, 437 Mass. 186, 190, 770 N.E.2d 428 (2002), quoting Commonwealth v. Devlin, 366 Mass. 132, 137, 314 N.E.2d 897 (1974). Therefore, in determining the meaning of "aid" or "assist" in the codification of the common law accomplished by G. L. c. 274, § 4, we must determine what these words mean in the context of this common-law crime. See **149 Perez, supra at 193, 770 N.E.2d 428 (because we are "constrained by our statute's common-law form," we must impose "the traditional common-law requirements").
The Commonwealth contends that, in defining these words, we should recognize that "[t]he gravamen of the crime of accessory after the fact is 'the obstruction of justice,' caused by individual's actions," and cites Commonwealth v. Sims, 41 Mass.App.Ct. 902, 903, 667 N.E.2d 1165 (1996), and Commonwealth v. Kelly, 1 Mass.App.Ct. 441, 448-450, 300 N.E.2d 443 (1973), in support. But that is simply not our law. As we noted in 2002 in Perez, 437 Mass. at 192-193, 770 N.E.2d 428, the "alternative 'obstruction of justice' approach" to accessory liability was incorporated in Model Penal Code § 242.3 (1980) as the offense of "hindering apprehension or prosecution," and that approach is now reflected in the law of many States. See, e.g., Conn. Gen. Stat. § 53a-165 (criminalizing "hindering prosecution" by way of, inter alia, "obstruct[ing], by means of ... deception ... any person from performing an act which might aid in the discovery or apprehension of [suspected offender]"); Mont. Code Ann. § 45-7-303 (same) ; N.H. Rev. Stat. Ann. § 642.3 (same). See also 2 W.R. LaFave & A.W. Scott, Jr., Substantive Criminal Law § 6.9, at 171 (1986) (in most jurisdictions, "accessory after the fact" offense "is characterized as 'hindering' apprehension or prosecution, or is otherwise described to reflect its true character as a crime involving interference with the processes of government"; collecting statutes [footnote omitted] ).[4] This approach was also incorporated *1126 in the Proposed Criminal Code of Massachusetts, c. 268, § 11 (1972),[5] as this court noted **150 in Devlin, 366 Mass. at 138-139, 314 N.E.2d 897, in 1974. But as we recognized in Perez, supra at 193-194, 770 N.E.2d 428 :
"Despite the suggestion of an alternative approach in Commonwealth v. Devlin, supra at 138-139 [314 N.E.2d 897], the Legislature has not amended the statute to transform the crime of being an accessory after the fact into the more modern articulation of the crime as an obstruction of justice. Our statute remains consistent with the common-law approach to the crime of being an accessory after the fact, and, unless and until the statute is amended, we must continue to construe it consistent with its common-law roots."
Because G. L. c. 274, § 4, has not subsequently been amended, it remains equally true today that we must adhere to the historical common-law approach in construing accessory after the fact liability.
"At common law, the liability of an accessory after the fact was derived from the liability of the principal, the accessory being considered 'an accomplice in the original crime.' " Perez, 437 Mass. at 190, 770 N.E.2d 428, quoting Devlin, 366 Mass. at 136, 314 N.E.2d 897. The examples of accessory after the fact cited by William Blackstone all involved physical conduct that assisted the principal in hindering his apprehension or accomplishing his escape: "furnishing [the principal] with a horse to escape his pursuers, money or victuals to support him, a house or other shelter to conceal him, or open force and violence to rescue or protect him." 4 W. Blackstone, **151 Commentaries *38. In the modern context, we continue to uphold convictions of accessory after the fact where, for instance, the defendants aided the principals in fleeing the scene of the crime, where they hid or destroyed evidence, or where they assisted in the disposal of stolen goods. See Commonwealth v. Valleca, 358 Mass. 242, 243-245, 263 N.E.2d 468 (1970) (attempt to sell *1127 stolen coins back to gallery from which they were stolen in return for "reward" sufficient to support conviction as accessory after fact to breaking and entering); Commonwealth v. Eagan, 357 Mass. 585, 590, 259 N.E.2d 548 (1970) ("action in aiding [perpetrators] to leave the scene" sufficient to support conviction as accessory after fact); Sims, 41 Mass.App.Ct. at 903, 667 N.E.2d 1165 (affirming conviction as accessory after fact of defendant who disposed of shooter's gun).
The refusal to answer a police officer's questions or provide requested information alone cannot constitute "aid" or "assistance" under G. L. c. 274, § 4, because, unless a person is subpoenaed or ordered by a court to testify, no one has a legal obligation to answer a police officer's questions or to provide information in a criminal investigation. See Commonwealth v. Warren, 475 Mass. 530, 538, 58 N.E.3d 333 (2016) ("[O]ur law guards a person's freedom to speak or not to speak to a police officer. A person also may choose to walk away, avoiding altogether any contact with police"). Where the defendant here was constitutionally entitled to refuse to provide the police with Soto's telephone number, his failure to do so cannot be deemed "aid" or "assistance" that would subject him to conviction as an accessory after the fact, regardless of his motive for the refusal.
The defendant, however, did more than refuse to cooperate with the police by not revealing information; he lied to them about his whereabouts at the time of the killing and about his knowledge of "Joel's" other names. There is no constitutional protection for lies. A material false statement made under oath constitutes the crime of perjury. G. L. c. 268, § 1. Commonwealth v. Carel, 105 Mass. 582, 585-586 (1870). Willfully misleading a police officer is a crime in violation of G. L. c. 268, § 13B, where the false statements "reasonably could lead investigators to pursue a course of investigation materially different from the course they otherwise would have pursued." Commonwealth v. Paquette, 475 Mass. 793, 801, 62 N.E.3d 12 (2016). But the defendant here could not be charged with perjury because his statements were not made under oath, and he was not charged with a violation of § 13B, perhaps because the Commonwealth would be unable to prove that the **152 defendant's false statements under the circumstances in this case reasonably could have led the investigators to pursue a materially different course of investigation. See id. at 801-802, 62 N.E.3d 12 (under § 13B, " 'He went that way' may well be misleading, but 'I don't know' likely is not").[6]
Under Federal law, making a materially false statement to a Federal law enforcement officer during a Federal criminal investigation is a crime in violation of 18 U.S.C. § 1001. See, e.g., United States v. Wilson, 879 F.3d 795, 806-807 (7th Cir. 2018) (affirming conviction of making false statements to Federal investigators); United States v. Phillipos, 849 F.3d 464, 466 (1st Cir. 2017), cert. denied, --- U.S. ----, 138 S.Ct. 683, 199 L.Ed.2d 564 (2018) (same). But our Legislature has not adopted a comparable law criminalizing all materially false statements made to State or local criminal investigators.
Under the common law, "[t]he accessory was defined by his direct, personal *1128 assistance as one who receives and comforts, or conceals the principal felon." Devlin, 366 Mass. at 136, 314 N.E.2d 897. We conclude that a person may provide the principal felon with the "direct, personal assistance" necessary to be an accessory after the fact through words alone spoken to the police during an interview, but only where he or she "aids" or "assists" the principal by providing the police with a false alibi or comparable information that would exculpate the principal, a false narrative of the crime that would give the principal a defense, or false information to assist in the principal's escape. This limiting principle is consistent with case law interpreting the common law of accessory after the fact liability. See, e.g., State v. Clifford, 263 Or. 436, 442, 502 P.2d 1371 (1972) ("the lie [must], under the existing circumstances, [be] likely to aid the offender to escape arrest or punishment"); Tipton v. State, 126 Tex.Crim. 439, 444, 72 S.W.2d 290 (1934) (false statement must either "tend[ ] to raise any defense for [principal felon]" or "within itself indicat[e] an effort to shield or protect [principal felon]"); Stephens v. State, 734 P.2d 555, 557 (Wyo. 1987) (contrasting "an affirmative statement ... such as supplying a false alibi" with "passive nondisclosure"). Cf. **153 State v. Budik, 173 Wash.2d 727, 736-737, 272 P.3d 816 (2012) (crime of rendering criminal assistance, which "embodies many of the same principles" as accessory after the fact, "requires an affirmative act or statement that raises a defense for [principal felon]"). And it comports with our ordinary rules of statutory construction, which "require us to construe any criminal statute strictly against the Commonwealth." Devlin, supra at 137-138, 314 N.E.2d 897.
In each of the Massachusetts cases where a defendant's conviction as an accessory after the fact was based in whole or in large part on his false statements to police, the defendant's false statements either provided the police with a false alibi or comparable information that would exculpate the principal, or a false narrative of the crime that would give the principal a defense. Thus, in Commonwealth v. Wood, 302 Mass. 265, 269, 270-271, 19 N.E.2d 320 (1939), superseded on another ground as recognized in Commonwealth v. Hurley, 455 Mass. 53, 69 n.15, 913 N.E.2d 850 (2009), we affirmed a conviction of accessory after the fact where the defendant, who resided in the home of a person who unlawfully induced abortions, falsely told the police that he had never seen the woman who died as a result of the abortion (and who had remained at the home for eight days) or the man who brought her there.[7] Similarly, in Commonwealth v. Doherty, 353 Mass. 197, 197, 203, 229 N.E.2d 267 (1967), overruled on another ground by Connor v. Commonwealth, 363 Mass. 572, 574, 296 N.E.2d 172 (1973), the husband and wife defendants were convicted as accessories after the fact to murder where the wife directed the killer and his friend to "get [the victim] out of here" (resulting in their moving him from the sofa in her home to the front porch), where they were among those who agreed that they would falsely tell the police "that two guys came up here and broke in and shot him," and *1129 where the husband falsely told the police that he had been in a fight, had run from the porch, and found the victim's body when he returned. See Commonwealth v. McQuade, 10 Mass.App.Ct. 894, 894-895, 409 N.E.2d 813 (1980) (defendant, who harbored bank robber at his apartment and concealed stolen goods and gun under his bed, lied to police that "he and [robber] had not left the **154 apartment all afternoon"); Commonwealth v. Homsey, 6 Mass.App.Ct. 913, 914, 379 N.E.2d 1111 (1978) (defendant "chauffeured [robber] to and from his hideout" in defendant's car, and lied to police by claiming that defendant was not person who purchased vehicle from him that was used to commit robbery).[8]
Here, in contrast, the defendant's false statements about driving home alone without stopping provided only himself with a false alibi -- it did not exculpate Soto. And by claiming no knowledge of the crime, apart from what he had heard on the news, and by stating that he knew Soto only by the name "Joel," he also did not give a false narrative of the crime (or, for that matter, any narrative regarding the crime) that could have provided Soto with a defense. We therefore conclude that the defendant's false and misleading statements to the police did not "aid" or "assist" Soto in any way that would suffice for the defendant to be found guilty of being an accessory after the fact to the murder committed by **155 Soto.[9]
Conclusion. The defendant's conviction as an accessory after the fact to murder is *1130 reversed. The judgment of conviction is vacated, and a judgment of acquittal is to be entered for the defendant.
So ordered.

We acknowledge the amicus brief submitted by the Committee for Public Counsel Services and the Massachusetts Association of Criminal Defense Lawyers.

The record does not suggest that Kenneth Soto and Hector Soto are related. Because they share a surname, we refer to Hector Soto as "Soto" and Kenneth Soto as "the victim."

The transcript of the October 23, 2011, police interview spells the name as "Joelle." In the trial transcript, the spellings "Joelle" and "Joel" are used interchangeably. We spell the name as "Joel" because that is Soto's middle name. Any difference in pronunciation is not discussed in the record.

While some State statutes reflect a broader approach to accessory liability -- see, e.g., Ohio Rev. Code Ann. § 2921.32(A)(5) (forbidding "communicat[ion]" of "false information to any person" with intent to "hinder the discovery, apprehension, prosecution, conviction, or punishment of another") -- it is noteworthy that the drafters of the Model Penal Code expressly proposed a statute with limited reach. Model Penal Code § 242.3(5), which prohibits "volunteer[ing] false information" to law enforcement officers, was not intended to cover "[m]ere failure to report crime" or "giving misleading or even false answers to inquiries initiated by the police." Model Penal Code § 242.3 comment 4, at 235 (1980). Rather, the choice of the word "volunteering" was intended to limit its reach only to "those who take the initiative in throwing the police off the track." Id. The delicate balance struck by the authors of this provision was premised "on the fear that a wider reach ... would invite abusive charges by police against persons interviewed in the course of investigating crime." Id.

The Proposed Criminal Code of Massachusetts was drafted by the fifty-two members of the Criminal Law Revision Commission, each of whom were appointed by the Attorney General on behalf of the Governor's committee on law enforcement and administration of criminal justice. Proposed c. 268, § 11, states in relevant part:
"§ 11. Hindering Apprehension or Prosecution.
"(a)+A person is guilty of hindering apprehension or prosecution if, with intent to hinder, prevent or delay the discovery, apprehension, prosecution, conviction or punishment of another person for the commission of an offense, he: ...
"(5) obstructs by force, intimidation, or deception anyone from performing an act which might aid in the discovery, apprehension, prosecution or conviction of such person ..."
Section 11 was drafted expressly to broaden and replace G. L. c. 274, § 4, see Proposed Criminal Code of Massachusetts, c. 268, § 11 & Revision Commission Note, at 151-152, but it was never adopted by the Legislature. See Commonwealth v. Perez, 437 Mass. 186, 193-194, 770 N.E.2d 428 (2002) ; Commonwealth v. Cataldo, 423 Mass. 318, 323 n.6, 668 N.E.2d 762 (1996).

As earlier noted, the defendant claimed to have no personal knowledge of the killing. Also, the Commonwealth acknowledged in closing argument that the detectives who interviewed the defendant knew that "Joel" was a reference to Soto. They repeatedly told the defendant that they knew he was not telling the truth because they had been engaged in the investigation for one week and "kind of [knew] the whole picture."

The defendant in Commonwealth v. Wood, 302 Mass. 265, 269, 19 N.E.2d 320 (1939), superseded on another ground as recognized in Commonwealth v. Hurley, 455 Mass. 53, 69 n.15, 913 N.E.2d 850 (2009), also assisted the principal by falsely telling the man who brought the woman to the house to obtain the abortion -- after the man found the woman exclaiming in pain on the day after the abortion -- that he was a doctor, that the pain was natural and nothing to worry about, and that the man should not call a doctor. When the woman finally went to a hospital, the defendant told her brother "to try to keep their names out of it." Id. at 270, 19 N.E.2d 320.

The Commonwealth relies on Commonwealth v. Spezzaro, 250 Mass. 454, 146 N.E. 3 (1925), in arguing that a defendant may be found guilty as an accessory after the fact for a false statement that did not exculpate the defendant or provide a false narrative of the crime. In Spezzaro, the defendant was standing near a vehicle across the street from where the principal felon, who had just broken and entered a shop to steal fifty-eight rolls of cloth at approximately 2 a.m. , was bringing the cloth into a building from a Packard automobile that the principal jointly owned with the defendant. Id. at 454-457, 146 N.E. 3. When questioned by police at the scene, the defendant falsely told the police that he did not know the principal and did not know who owned the Packard; he also said that he had not seen the principal "at any time that night." Id. at 456, 146 N.E. 3. In concluding that the evidence was sufficient to find the defendant guilty as an accessory after the fact, the court noted, "If these statements, made by the defendant at the time of his arrest, were intentionally false, they tended to show his guilt.... [E]vidence of this kind is an admission from which guilt may be inferred." Id. at 457, 146 N.E. 3. As the court's citations to Spezzaro in contemporaneous cases illustrate, the court viewed the defendant's false statements as evidence of consciousness of guilt, not as the aid or assistance that made the defendant an accessory after the fact. See Commonwealth v. Cavedon, 301 Mass. 307, 315, 17 N.E.2d 183 (1938) ; Commonwealth v. Di Stasio, 297 Mass. 347, 360, 8 N.E.2d 923, cert. denied, 302 U.S. 683, 58 S.Ct. 50, 82 L.Ed. 527 (1937) ; Commonwealth v. Powers, 294 Mass. 59, 62, 200 N.E. 562 (1936) ; Commonwealth v. Vellucci, 284 Mass. 443, 446, 187 N.E. 909 (1933) ; Commonwealth v. Gentile, 255 Mass. 116, 118, 150 N.E. 830 (1926). Although not crystal clear from the opinion, the court appeared to conclude that the evidence indicated that the defendant was on the street in the early morning to aid the principal in his getaway. See Spezzaro, supra at 458, 146 N.E. 3 ("it could have been found that the defendant had knowledge that the felony was committed by [the principal], and that the defendant was in this place, expecting the arrival of the Packard car, and was aiding and assisting the principal to avoid detention and arrest").

Having concluded that the defendant did not provide the police with a false alibi or give a false narrative of the crime that could have provided the principal with a defense, we need not consider whether a defendant could be found guilty as an accessory after the fact where the police would not be reasonably likely to be led astray by the false alibi or narrative because they knew it to be false when they heard it.