NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-91

COMMONWEALTH

vs.

DEVAUGHN JOHNSON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Devaughn Johnson, appeals from his conviction by a Superior Court jury of accessory after the fact to armed robbery, G. L. c. 274, § 4.  He argues that the evidence was insufficient to prove that he knew that the two principals had committed an armed robbery, or that he attempted to aid them in avoiding punishment.  He further contends that he cannot be convicted of being an accessory after armed robbery because one of the principals, who died before trial, was not convicted of the armed robbery.  We affirm.

Background.  On the evening of November 21, 2020, Aspasia Filiogiannis rented a hotel room in Haverhill, accompanied by the two principals:  her boyfriend David Trongeau and his friend

Kaiden Henderson.  A short time later, the defendant arrived at the hotel room.  Henderson, Trongeau, and the defendant left the hotel in Filiogiannis's silver Toyota Corolla.  Henderson was wearing black pants and a black hooded sweatshirt; Trongeau was wearing white pants and a white shirt.  Filiogiannis understood that they were going elsewhere in Haverhill to "smoke and get some weed."

The victim, Jose Vasquez, was living with his parents and thirteen-year-old sister in a second-floor apartment in Haverhill.  At about 9:24 P.M. on November 21, surveillance cameras outside the building captured video showing the Toyota passing available parking spaces alongside the victim's home and stopping farther down the street.  Leaving the Toyota running and with its lights on, the driver (Henderson) and front seat passenger (Trongeau) got out and walked quickly to the victim's home.  The back seat passenger remained in the Toyota, as shown by the light from a cell phone; the jury could infer that it was the defendant.[1]

The victim's sister was sitting at the kitchen table when there was a knock at the apartment door.  She opened it to

---

[1] The defendant would have been recognized by the victim's family; he had been to their home "a lot" and had eaten a meal there, and he had a face tattoo of a six-pointed star.  In the defendants' case, Henderson testified that the defendant waited in the back seat of the Toyota.

Henderson and Trongeau.  The victim escorted them into his bedroom.  A few minutes later, there were crashing sounds and the victim walked out of his bedroom with blood coming out of his neck and arms.  The victim fell to the kitchen floor, lost consciousness, and soon died, despite his parents' efforts to stop the bleeding.

Twenty-four minutes after they had entered the apartment building, Henderson and Trongeau ran out of it.  Henderson had a multicolor-striped backpack and a duffel bag slung over his shoulder and his pockets were bulging.  Trongeau, carrying a knife, ran directly behind Henderson.  Just before Henderson and Trongeau reached the Toyota, the defendant opened both of its front doors.  Henderson got behind the wheel, Trongeau got into the back seat, and the Toyota sped off.

Police arrived at the victim's home.  In the victim's bedroom was a locked safe stained with blood.  Inside the safe were three bundles of cash totaling $2,730, labeled "exotics," "edibles," and "biscotti," which was street terminology for flavors of marijuana.  Over ten thousand dollars in cash was missing from the victim's room.  The victim had died of seventeen stab wounds, including to the neck, chest, and hands.

Meanwhile, about an hour after he had left the hotel, the defendant entered its lobby alone.  He sauntered past the front desk and, as soon as he was out of sight of the desk clerk,

3

quickly walked to a rear door, where he let Henderson and Trongeau into the hotel. Henderson, Trongeau, and the defendant went to Filiogiannis's hotel room and banged hard on the door until she let them in. Trongeau's clothes were covered in blood, and Henderson's clothes were also bloodstained. They were carrying the victim's multicolor-striped backpack and another bag. Trongeau had a cut on the side of his right index finger.

Two customers met the defendant in the hotel room to buy exotic marijuana. On the bed was a duffel bag containing "a lot of weed," from which the defendant obtained the marijuana. When one of the customers saw that Trongeau had a knife and blood on his hand, that customer asked what had happened and Henderson told him to "mind [his] business." When the other customer saw Trongeau's bloody hand and asked what happened, the defendant interjected, "mind your fucking business." Trongeau showered, and he and Henderson put their bloody clothes in bags.[2]

Forty-eight minutes after the defendant and Henderson had returned to the hotel, they left with the two customers. In exchange for exotic marijuana that the defendant gave them, the

_____

[2] In a dumpster in the hotel parking lot, police later found clothing including Henderson's jeans, stained with blood that matched the victim's.

4

two customers gave the defendant a ride to elsewhere in Haverhill and Henderson a ride to New Hampshire.

Filiogiannis gave Trongeau a ride to Taunton.  During the drive, Trongeau was upset and crying.  He said that he and Henderson were arguing with the victim, and that he "blacked out and stabbed [the victim] in the neck."  In a dumpster in Taunton, Trongeau discarded a bloody hotel comforter and the victim's multicolor-striped backpack.[3]

On November 22, the defendant received a jail call from an inmate.  In it the defendant said that on the night before, the victim had been stabbed to death.  When the inmate asked what happened, the defendant referred to someone as "little bro who I got popped with" and said, "I'm trying to get some bread for him right now to skip state."  At the mention of cameras outside the victim's apartment building, the defendant said, "I got an alibi, I'm at the crib."

On November 23, Trongeau was arrested.  That evening, the defendant received a jail call from a different inmate, who said that Trongeau was "coming here."  The defendant told that inmate to tell Trongeau "to keep his mouth shut."  In another call from that inmate, the defendant said, "RIP Moon Dog," using the

_____

[3] Police later found the backpack at a waste disposal facility.  In it were rolled marijuana cigarettes and a digital scale.

5

victim's nickname.  The defendant also said, "Who put me in the whip?"  "Whip" is slang for car.

Interviewed by police on November 25, the defendant said he spent the night of November 21 at home with his girlfriend.  He admitted he was childhood friends with Trongeau, but denied knowing Henderson.[4]  He said the last time he had been in the victim's apartment was "months" before.

On December 1, 2020, police arrested Henderson in a hotel room in Boston.  In his possession was a one-way bus ticket to South Carolina for the following day, bought using a false name.

The defendant was charged with two indictments for accessory after the fact, one predicated on murder, and the other on armed robbery.  Henderson and Trongeau were charged with the murder and armed robbery of the victim.  Trongeau died before trial, and the Commonwealth entered a nolle prosequi of his indictments.

The defendant and Henderson were tried jointly.  After the Commonwealth presented evidence as set forth above, Henderson testified that the defendants' plan was to buy marijuana from the victim, and during the transaction Trongeau suddenly stood up, pulled out a knife, and stabbed the victim in the neck.

---

[4] At trial, Henderson testified that the defendant was a "good friend" of his.  On November 21, the defendant and Henderson had tried to rent a different hotel room together.

6

Henderson testified that the black bag he took from the victim's bedroom was his own backpack that he had left there previously. Henderson admitted that during the drive back to the hotel he and Trongeau were covered in blood, but testified that no one told the defendant about the armed robbery and stabbing or asked him to let them into the hotel through the back door.

Henderson was convicted of first-degree felony murder and armed robbery. The defendant was convicted of accessory after the fact to armed robbery, and acquitted of accessory after the fact to murder. The defendant now appeals.

Discussion. Sufficiency of evidence. The defendant argues that the evidence was insufficient for the jury to convict him of accessory after the fact to armed robbery.

To prove that the defendant had committed accessory after the fact to armed robbery, the Commonwealth was required to establish that the defendant knew that Henderson and Trongeau had committed armed robbery, after which the defendant "harbor[ed], conceal[ed], maintain[ed], or assist[ed] the principal felon[s] . . . or g[ave] such offender[s] any other aid, . . . with intent that [they would] avoid or escape detention, arrest, trial or punishment." G. L. c. 274, § 4. See Commonwealth v. Rivera, 482 Mass. 145, 147-148 (2019). We consider the facts in the light most favorable to the

7

Commonwealth.  See Commonwealth v. Baez, 494 Mass. 396, 400 (2024).

The defendant contends that the evidence did not establish that he knew that Trongeau and Henderson had committed armed robbery, or that he intended to render them aid to avoid punishment; his conviction is a legal impossibility because Trongeau was never convicted as principal; and the evidence of his conduct included alternate theories that were not supported by substantial evidence.  We consider each argument in turn.

1.  Knowledge of armed robbery.  The defendant contends that it would be "speculative" for the jury to infer that the defendant learned of the armed robbery after Trongeau and Henderson got into the Toyota.  We are not persuaded.

The jury could infer that the defendant knew that Henderson and Trongeau had committed armed robbery.  From his position in the back seat of the Toyota, the defendant opened both of its front doors in the seconds while Henderson and Trongeau were running toward it.  Cf. Baxter v. Commonwealth, 489 Mass. 504, 512 (2022) (accessory after fact proven with evidence that after gunshots nearby, defendant drove shooter away).  Henderson was carrying the multicolor-striped backpack and the other bag, neither of which he had had when he left the Toyota minutes before.  At the hotel, the defendant sauntered past the front desk and then speed-walked to the back door to let Henderson and

8

Trongeau into the hotel.  The defendant arranged to sell marijuana stolen from the victim, which he obtained from a black duffel bag that the jury could infer was the bag Henderson had carried out of the victim's home.  Henderson's black clothes were bloodstained, and Trongeau's white clothes were blood-soaked and he was carrying a knife.  When one of the customers asked what had happened to Trongeau, the defendant warned the customer to "mind your fucking business."  The defendant's consciousness of guilt added to proof of his intent:  in jail calls, he said he had an "alibi" and demanded to know who had "put [him]" in the Toyota, and he falsely told police that he spent the evening of the murder with his girlfriend and did not know Henderson.

That was ample evidence proving the defendant's knowledge of the armed robbery.  See Commonwealth v. Watkins, 486 Mass. 801, 807 n.10 (2021) ("Even assuming that [accessory] did not know about the armed robbery when he initially joined [principals] in the vehicle, the jury could have inferred that [accessory] became aware that [principal] had robbed the victim of his vehicle once [principal] gave [accessory] the pistol and showed him that the victim was locked in the trunk").  To the extent that the defendant argues that the evidence did not prove that he had "pre-existing knowledge" of a plan of Henderson and Trongeau to rob the victim at knifepoint, the argument is

9

unavailing because pre-existing knowledge is not an element of the crime of accessory after the fact. See Commonwealth v. Hoshi H., 72 Mass. App. Ct. 18, 21 (2008).

2. Intent to aid in avoiding punishment. The defendant contends that the evidence was insufficient to prove that he intended to aid Henderson and Trongeau in avoiding punishment.

The jury could infer that the defendant aided both principals by opening the Toyota's doors to speed their getaway, even though he did not drive the getaway car as the defendant did in Baxter, 489 Mass. at 512. In addition, the defendant aided Trongeau by telling the marijuana customer to "mind your fucking business," and aided Henderson by giving the customers exotic marijuana stolen from the victim in exchange for their driving Henderson to New Hampshire. The defendant aided Henderson's attempt to avoid arrest by instructing an inmate to warn Trongeau to "keep his mouth shut," and, the jury could infer, by giving Henderson money to buy a one-way bus ticket to South Carolina to "skip state." There was more than sufficient evidence to prove the defendant's intent to aid Henderson and Trongeau in avoiding punishment. See Rivera, 482 Mass. at 151 ("we continue to uphold convictions of accessory after the fact where, for instance, the defendants aided the principals in fleeing the scene of the crime, where they hid or destroyed

evidence, or where they assisted in the disposal of stolen goods").

3. **Lack of conviction of principal.** The defendant argues that because the Commonwealth entered a nolle prosequi of the armed robbery indictment of Trongeau, who died before trial, the defendant cannot be convicted of being an accessory after that crime. We are not persuaded.

"To convict someone as an accessory after the fact, it is necessary to prove beyond a reasonable doubt that the alleged principal was guilty" (quotation and citations omitted). Commonwealth v. Iacoviello, 90 Mass. App. Ct. 231, 248 n.16 (2016). As set forth above, the jury heard ample evidence that both Henderson and Trongeau committed armed robbery. The judge instructed that the Commonwealth was required to prove that the defendant "assisted either . . . Henderson or . . . Trongeau or both following the commission of . . . armed robbery." We assume that the jury followed that instruction when they convicted the defendant of being an accessory after armed robbery. Moreover, they separately convicted Henderson of armed robbery. Trongeau's death before trial did not prevent this defendant's conviction as an accessory after the armed robbery.

4. **Alternate theories of defendant's conduct.** Finally, the defendant argues that because the jury heard evidence of his various acts as an accessory after the fact to armed robbery,

11

"the risk existed that the jury found [the defendant] guilty based on insufficient grounds."[5]

The defendant's argument is essentially that there was so much evidence of different acts he committed in aiding the principals that the Commonwealth's proof is insufficient because we cannot know which of the many pieces of proof the jury believed.  The argument is without merit.  As set forth above, the jury heard abundant evidence proving the defendant guilty of being an accessory after the fact to the armed robbery of the victim.

Judgment affirmed.

By the Court (Singh, Grant & Brennan, JJ.[6]),

Clerk

Entered:  May 7, 2025.

---

[5] The defendant does not argue, and did not request at trial, that the judge should have instructed that the jury had to unanimously agree as to which facts proved each element of accessory after the fact to armed robbery.  We do not reach that issue, except to say that it appears that he would not have been entitled to such an instruction.  See Commonwealth v. Santos, 440 Mass. 281, 285-286 (2003) (unanimity instruction not required as to factual scenario for armed robbery), overruled on other grounds by Commonwealth v. Anderson, 461 Mass. 616, cert. denied, 568 U.S. 946 (2012).

[6] The panelists are listed in order of seniority.

12